EXHIBIT A

### LOAN AGREEMENT
2008 38.70m IAG motor yacht, Official Number JMP20048

This Loan Agreement (the "Agreement") is made as of June 28, 2023, by and among Sweet Caroline Marine Ltd, a Republic of the Marshall Islands company ("Lender"), on one hand, and AVYC, LLC, a Republic of the Marshall Islands limited liability company ("Borrower"), on the other.

WITNESSETH:

WHEREAS, Borrower desires to borrow $13,800,000.00 from Lender in the form of a term loan as described in and subject to the terms of this Agreement;

WHEREAS, the loan made by Lender to Borrower is to be secured by a statutory ship mortgage on the 2008 38.70m (registered length) IAG motor yacht, currently registered with the Jamaica Ship Registry, under Official Number JMP20048, under the name "SWEET CAROLINE", at the port of Montego Bay (the "Vessel"), together with the Vessel's engines, equipment and appurtenances, and a security interest in and to other personal property on or about the Vessel;

WHEREAS, the loan made by Lender to Borrower is to be fully guaranteed by the Guarantors.

NOW, THEREFORE, for and in consideration of the foregoing premises, which are hereby incorporated herein as true, and the terms, conditions, representations, warranties, covenants, promises and agreements herein contained, the parties hereto agree as follows:

I.     Definitions:

1.1     Certain Definitions

"Account Debtor" shall have the same meaning assigned to that term in the version of the Uniform Commercial Code in effect in the State of Florida from time to time, including, without limitation, as amended by Revised Article 9 as enacted in the State of Florida.

"Affiliate" means any corporation or Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with Borrower. For purposes of this definition "control" means the power to vote or direct the vote of more than 50% of the voting interests of such corporation or Person.

"Agreement" means, collectively, this Loan Agreement, together with any and all exhibits, attachments and amendments thereto and modifications, extensions, restatements and substitutions thereof and therefor.

"Lender" means SWEET CAROLINE MARINE, LTD., a Republic of the Marshall Islands company.

"Banking Day" means any day upon which the Federal Reserve Lender of New York and U.S. domestic commercial Lenders are open for the transaction of domestic business.

"Collateral" means the Vessel, its engines, equipment and appurtenances, the proceeds from the sale thereof, all present and future: (a) charter or management agreements covering the charter (whether on a bareboat, demise, voyage or time charter basis), lease, use or operation of the Vessel, together with the benefits, rights and remedies thereunder, including without limitation all charter hire payments, rents and other monies now or hereafter due or to become due pursuant to said agreements, whether now owned or hereafter acquired; and (b) all accounts, general intangibles (including payment intangibles and software), and any supporting obligations, including guaranties, whether now owned or hereafter acquired, arising out of the use or operation of, or otherwise related to, the Vessel or any charter concerning the Vessel; (c) all amounts due from underwriters under any insurance on the Vessel as payment of losses, or as return premiums, or otherwise; as well as (d) all cash and non-cash proceeds of any of the foregoing; together with and including and all other property encumbered by any security documents from Borrower or

Guarantors to Lender which secure the Note, together with all property of Borrower that for any purpose, whether in trust for Borrower for custody, pledge, collection or otherwise, is now or hereafter in the actual or constructive possession of, or in transit to, Lender in any capacity, its correspondents or agents, and all claims of Borrower against, Lender at any time existing.

"Default Interest Rate" means the lesser of (i) 24% per annum, or (ii) the maximum lawful rate permissible under applicable law on the unpaid principal balance under this Agreement and the other Loan Documents at the time of an Event of Default, after deducting any paid and unaccrued or paid and unearned interest from the principal balance then due.

"Event of Default" means an event or occurrence described in Article VII of this Agreement.

"Financial Statements" means the combined or uncombined, as applicable, balance sheets, statements of income and retained earnings and statements of changes in cash flow for each calendar year to be delivered to Lender pursuant to Section 5.I.b of this Agreement.

"Fiscal Year" means a calendar year.

"Guarantor" or "Guarantors" means AeroVanti, Inc., a Delaware corporation, and AeroVanti Yacht Club, LLC, a Delaware limited liability company, jointly and severally.

"Loan" means the Term Loan made to Borrower as described in Section 2.1 hereof.

"Loan Anniversary Date" means June 28 of each year during the Term of this Loan.

"Loan Documents" means those documents set forth in Section 3.1 hereof, and any other agreements, instruments, documents or certificates heretofore, now or from time to time hereafter executed by or on behalf of Borrower, or at the request of Lender and delivered to Lender in connection therewith or pursuant thereto, including, without limitation, the Mortgage on the Vessel, the Assignment of Insurances, the Note, the UCC financing statement, and the Guaranty, in each case, as the same may be amended, restated, supplemented or otherwise modified from time to time and all extensions, renewals or substitutions thereof or therefore.

"Mortgage" means the statutory ship mortgage covering the Vessel in form and substance satisfactory to Lender to grant Lender a first lien and ship mortgage on the Vessel, and any amendments and modifications thereof, which shall attain first priority and shall be established, maintained and perfected as a first preferred statutory ship mortgage upon filing.

"Note" means the promissory note executed by Borrower, as may be amended, modified, renewed, extended, replaced or consolidated from time to time.

"Obligations" means each and every promise, agreement, covenant, debt and all other obligations and indebtedness of Borrower to Lender, its successors or assigns, whether primary, secondary, contingent, direct, or indirect, howsoever incurred, created, arising or evidenced, whether presently or hereafter existing, evidenced, arising or becoming due, including, without limitation, such obligations and indebtedness of Borrower to Lender arising from or in connection with the Loan under this Agreement, the Note or any other Loan Documents with any refinancing, substitutions, extensions, renewals, replacements and modifications for or of the foregoing.

"Person" means any individual, sole, proprietorship, joint venture, partnership, limited partnership, association, unincorporated organization, joint-stock company or association, trust, corporation, entity, institution or government body.

"Property" means any interest in any kind of property or asset, whether real, personal or mixed, or tangible or intangible and includes the Vessel.

"Vessel" means the 2008 38.70m (registered length) IAG motor yacht, currently registered with the Jamaica Ship Registry, under Official Number JMP20048, under the name "SWEET CAROLINE", at the port of Montego Bay, its engines, equipment and appurtenances.

    1.2    <u>Accounting and Other Terms</u>

Any accounting terms used but not otherwise defined herein shall be construed following GAAP. All other terms used but not otherwise defined herein shall have the meanings set forth in the other Loan Documents, or as provided by the version of the Uniform Commercial Code as in effect in the State of Florida from time to time.

II.    <u>The Credit</u>

    2.1    <u>Term Loan</u>

    2.1.a    <u>Funding of Term Loans.</u> Subject to terms and conditions of this Agreement, Lender agrees to lend to Borrower the sum of THIRTEEN MILLION EIGHT HUNDRED THOUSAND AND 00/100 U.S. DOLLARS ($13,800,000.00) in lawful money of the United States, with interest at the applicable Interest Rates defined below.

    2.1.b    <u>The Note.</u> In order to evidence the Loan made by Lender to Borrower on the date hereof, Borrower will execute and deliver a promissory note, in the form of <u>Exhibit A</u> hereto (together with any and all amendments, modifications, supplements, substitutions, renewals, extensions, and restatements, thereof and therefor, the Note, repayable and maturing in accordance with and bearing interest as set forth therein).

    2.2    <u>Term of Loan, Interest Rates</u>

    2.2.a    <u>Term Loan.</u> Borrower's Loan shall be a term loan, and absent an Event of Default or an event of Mandatory Prepayment as provided below in <u>Section 2.4</u> whereby Borrower fully repays the Loan and all amounts due herein, the final payment of principal, interest and costs shall be paid on or before January 1, 2025, or as otherwise provided herein (the "<u>Maturity Date</u>").

    2.2.b    <u>Interest on the Loans; Payments.</u> As set forth more specifically in the Note, interest on this Note shall accrue from and after the date of disbursement at an annual fixed rate equal to eighteen percent (18%) (the "<u>Interest Rate</u>"). NOTICE: Under no circumstances will the interest rate on the Note be more than the maximum interest rate allowed by applicable law.  Interest shall accrue daily and shall be calculated on the basis of a 365-day year and the actual number of days elapsed in any partial calendar month. Absent an Event of Default or an event of Mandatory Prepayment as provided below in <u>Section 2.4</u>. On the 1st day of each month from September 1, 2023 through December 1, 2024, Borrower shall make consecutive monthly installments of principal in the amount of One Hundred Thousand ($100,000.00) per month.  All unpaid principal, interest and costs hereunder shall be due and payable on the Maturity Date. **THIS IS A BALLOON LOAN. Notwithstanding anything to the contrary herein, provided the Borrower makes the principal payments as set forth herein and satisfies the loan on the Maturity Date, no interest shall be due.**

    2.2.c    <u>Default Interest Rate; Late Fee</u>. All Obligations shall bear interest from and after the occurrence of an Event of Default and for so long as an Event of Default shall be continuing, and without constituting a waiver of any such Event of Default, on the unpaid principal balance hereof at the Default Interest Rate.  Borrower agrees to pay a late charge equal to ten percent (10%) of each payment of principal and interest or Twenty-Five Dollars ($25.00), whichever is greater, which is not paid within ten (10) days of the date on which it is due.

2.2.d   <u>Maximum Interest Rate.</u> In no event shall any rate of interest charged hereunder exceed the highest applicable rate permitted by law (the "<u>Maximum Rate</u>"). If, in any month, the applicable rate absent such limitation would have exceeded the Maximum Rate, then the rate for that month shall be the Maximum Rate, and if in future months, the rate would otherwise be less than the Maximum Rate, then to the extent permitted by applicable law, the rate shall remain at the Maximum Rate until such time as the amount of interest paid hereunder equals the amount of interest which would have been paid if the same had not been limited by the Maximum Rate. Lender may, at its option, charge any interest payable by Borrower to Borrower's loan account, which amounts shall thereupon constitute Obligations hereunder and shall thereafter accrue interest as provided for in this Agreement. Nothing contained in this Agreement or the other Loan Documents shall be construed or shall so operate either presently or prospectively to require Borrower to pay interest at a rate greater than the rate which is now or hereafter lawful for transactions of this kind. If the interest rate exceeds any applicable law relating to interest, then this Agreement and the Loan Documents shall be interpreted and construed to require payment of interest only to the extent of such maximum lawful rate, not to exceed the rate set forth in this Agreement or the other Loan Documents, where applicable.

2.3   <u>Fees and Expenses</u>

2.3.a   <u>Expenses.</u> Borrower shall reimburse Lender for all of its reasonable expenses incurred in connection with the preparation (including due diligence), negotiation, documentation, amendment, modification, administration or enforcement of this Agreement, the Note or any other Loan Documents, including reasonable attorney, paralegal, marine surveys and other professional fees, and for all filing, approval, survey, title, inspection and insurance fees and charges incurred by Lender in connection with the preparation, negotiation, drafting, underwriting, collateralizing, administrating, issuing or enforcing the Loan Documents.

2.4   <u>Mandatory Prepayment.</u> If Borrower sells the Vessel, the proceeds of any sale shall be applied to the outstanding principal balance of the Loan. In addition, if the net amount realized from the sale of the Vessel is less than the outstanding principal balance of the Loan, Borrower agrees to remit to Lender any additional amounts required so that the outstanding principal balance of the Loan is paid in full.

2.5   <u>Application of Payments and Prepayments.</u> Any payments made by Borrower under this Agreement, the Note or any other Loan Documents shall be applied to Borrower's Obligations owing as of the date of payment in the following order: (i) to any amounts or fees owing to Lender pursuant to this Agreement and the Loan Documents; (ii) to interest accrued pursuant to the terms of the Note; and (iii) to the principal balance of each respective Loan.

2.6   <u>Default Interest.</u> In the event any amount of principal or interest due hereunder or any other payment due under this Agreement or any of the other Loan Documents becomes overdue, such overdue amount shall accrue interest at the Default Interest Rate from the due date through the date of payment.

2.7   <u>Payment to Lender.</u> The Lender's right from time to time after the occurrence or happening of an Event of Default hereunder (which has not been waived in a writing signed by the Lender) by the Borrower against the Borrower's monies, deposits, credits, accounts or other property now or at any time in possession or control of the Lender, is hereby acknowledged and agreed to by the Borrower.  For purposes of this Agreement and the other Loan Documents, payments to the Lender with checks or other similar drafts, which shall be returned to Lender due to insufficient funds shall be deemed not to have been paid to Lender in the first instance.  Payments to the Lender shall be made to the Lender at its

office at c/o Robert Allen Law, 1441 Brickell Avenue, Suite 1400, Miami, FL 33131, or at such other place as Lender may direct from time to time in writing.

2.8. <u>Returned Payment Fee</u>.  Borrower understands that Lender may charge and collect a processing fee of $30.00 for each and every check on which payment has been refused by the payor or Lender because of insufficient funds.

III.   <u>Conditions Precedent</u>

3.1   <u>Delivery of Documents as Conditions Precedent to Term Loan</u>. The delivery to Lender of each of the following documents (the "<u>Loan Documents</u>") executed by Borrower and/or third parties as indicated thereon, in each case in form and substance satisfactory to Lender shall constitute separate and distinct conditions precedent to the making of the Loan by Lender to Borrower:

3.1.a   A duly executed original of this Agreement;

3.1.b   The duly issued and executed Note, dated as of the date hereof;

3.1.c   Mortgage on the Vessel;

3.1.d   Deed of Covenants;

3.1.e   (i) Proof that the Mortgage on the Vessel is in a form so that it may be duly filed and recorded and accepted for filing and recording; (ii) abstracts or transcripts showing the Mortgage constitutes the first lien on the Vessel; (iii) estoppel statements, releases of or satisfactions to release and file UCC termination statements of any liens or encumbrances on or affecting title to the Vessel, and other Collateral, including estoppel statements, releases or satisfactions of any existing mortgage and UCC filings, or equivalent in the applicable jurisdiction, on the Vessel and other Collateral; and (iv) such other documents, certificates, affidavits, indemnities and opinions as Lender may require of Borrower;

3.1.f   Uniform Commercial Code financing statement, or equivalent search results for Borrower and Guarantors; and from such other offices or governmental agencies or bodies as Lender, in its sole discretion, may request from Borrower, indicating that there are no liens on, or creditors claiming any interest in, the Collateral of Borrower;

3.1.g   All information, Financial Statements or other notices for Borrower and Guarantors, including, but not limited to, lists of contingent liabilities, credit bureau reports from domestic and the International Credit Bureau, all real estate holdings, personal liquidity statements and income tax returns to be delivered to Lender as provided for herein;

3.1.h   Insurance Binders or policies covering the Vessel, effective upon the closing of the sale of the Vessel, in a form acceptable to Lender, with certificates or endorsements naming Lender as an additional insured (to the extent such insurance company is willing to name Lender as an additional insured) and loss payee, and, providing for, including but not limited to, Mortgagee's (Breach of Warranty) Insurance, either by endorsement or policy, in favor of Lender for the Loan Amount, as well as fire, theft, and "all risk" marine hull and machinery and protection and indemnity insurance, pollution and environmental coverage, and seizure coverage, on the Vessel, all in form and as required by the Loan Agreement and the Mortgage;

3.1.i   Guaranty of each of AeroVanti, Inc. and AeroVanti Yacht Club, LLC;

3.1.j   Assignment of Insurances;

3.1.k    A certificate of the Members and Manager(s) of Borrower, certifying (i) that attached to the certificate is a true, correct and complete copy of Borrower's articles of incorporation or equivalent charter as in effect on the date of adoption of the board resolution referred to below, and that the certificate or articles of organization are still in full force and effect, (ii) that attached to the certificate is a true, correct and complete copy of the Bylaws or equivalent of Borrower as in effect on the date of adoption of the board resolution referred to below, and that such documents are still in full force and effect, and have not been amended, altered or repealed, (iii) that attached hereto is a true, correct and complete copy of the resolutions adopted by the shareholders/ members and manager(s) of Borrower, and that such resolutions have not been amended, altered or repealed and are in full force and effect, and (iv) as to the incumbency of each of the officers of Borrower executing the Loan Documents to which Borrower is to be a party;

3.1.l    A Closing Statement/Disbursement Authorization authorizing Lender to disburse Loan proceeds first, to pay any prior lien holders holding an interest in the Collateral, second, to Lender for its fees, costs and expenses in connection with the Loan and the Loan Documents, including loan fees, abstract search and insurance charges, filing fees and mortgage and intangible taxes, and professional fees, and third, to Lender as part of the purchase price of the Vessel pursuant to the terms of that certain Yacht Purchase and Sale Agreement, between Lender and Borrower for the sale and delivery of the Vessel to Borrower, as amended (the "PSA").

3.1.m    In form and substance satisfactory to Lender, each and every agreement, document, note, release, guaranty, certificate, notice, affidavit, exhibit, schedule, resolution, legal opinion, assignment, security agreement or financing statement, which Lender may reasonably request from Borrower to effect the intent of this Agreement;

3.1.n    Attestation regarding financial statements, if any are required by Lender;

3.1.o    Confirmation from Lender that Lender has received from the Borrower the Borrower's cash payment due under the PSA;

3.1.p    Share Pledge Agreement of all of the Patrick Britton Harr's shares (the "Shares") in AeroVanti, Inc., a Delaware corporation ("AeroVanti"), to Lender, along with evidence satisfactory to Lender, in Lender's sole discretion, that AeroVanti's governing documents have been amended to restrict issuance of additional shares of AeroVanti at all times during the term of this Loan and if/when applicable, delivery to Robert Allen Law of the original share certificate(s) evidencing the Shares being pledged to Lender (the "Share Certificates"), which Share Certificates will be held by Robert Allen Law pursuant to the terms of the Escrow Agreement referenced in Section 3.1.r below;

3.1.q    Share Pledge Agreement of all of the shares of Borrower to Lender, along with evidence satisfactory to Lender, in Lender's sole discretion, that Borrower's governing documents have been amended to restrict issuance of additional shares of Borrower at all times during the term of this Loan;

3.1.r    Escrow Agreement to be entered into between Lender, AeroVanti, Patrick Britton Harr and Robert Allen Law with respect to holding the Share Certificates; and

3.1.s    Confirmation from Lender that Lender has received the Vessel's tracking device information.

3.2    Representations and Warranties. The representations and warranties set forth in Article IV hereof shall be true and correct in all material respects as of the date of closing and the time of funding the Loan.

IV.     Representations and Warranties.  As further inducement to Lender to enter into this Agreement and make the Loan hereunder, Borrower represents and warrants, as of the date hereof (except as such representation or warranty relates solely to another date), the following, which shall survive the execution and delivery of this Agreement, the Note and the Loan Documents and continue until all of the Obligations and indebtedness of Borrower have been paid, satisfied or discharged in full, regardless of any investigation by Lender of Borrower's financial condition or assets:

4.1     Organization of Borrower. Borrower has appointed and will maintain a registered agent in the Republic of the Marshall Islands in compliance with applicable regulations. The exact legal name of Borrower is as set forth in the first paragraph of this Agreement. Borrower's state issued organizational identification number and taxpayer identification number have been provided to Lender.

4.2     Authority and Consents.  Borrower has all corporate power and authority to own and operate its property and assets. No consent, approval or authorization of, or filing, registration or qualification with, any Person, governmental, regulatory or otherwise, is required to be obtained or effected by Borrower in connection with the execution, issuance, delivery and performance of this Agreement, the Note and the Loan Documents to which Borrower is a party or signatory or the incurrence or performance of the Obligations of Borrower or, if so required, it has been duly obtained or effected before the date hereof. The execution, issuance, delivery and performance of this Agreement, the Note and the Loan Documents to which Borrower is a party or is a signatory and the incurrence or performance of the Obligations and indebtedness of Borrower hereunder, (a) has been duly and properly authorized by all necessary corporate, manager/director, member/shareholder and other action of Borrower, and (b) has not resulted in and will not result in:

(i)     The creation or imposition of any lien, security interest, mortgage, charge or any encumbrance of any nature whatsoever (except in favor of Lender) upon any property or assets of Borrower; or

(ii)    The violation or contravention of, the occurrence of a default, Event of Default or event, which with the passage of time or giving of notice or both, would constitute a default or event of default under, any term or provision any order of any court, or any contract, agreement, mortgage, indenture, instrument, judgment or laws to which Borrower is a party or signatory or by which Borrower is bound.

4.3     Binding Effect and Enforceability. This Agreement, the Note and the other Loan Documents to which Borrower is a party or signatory are the legal, valid and binding Obligations of Borrower enforceable in accordance with their terms and provisions, except as the same may be limited by bankruptcy and moratorium laws and all other similar laws affecting the rights of creditors generally and the application of general principles of equity and to the extent that specific performance may be granted or denied and, on the date of delivery, Borrower is not in violation or contravention of, and no Event of Default exists under, any of the foregoing.

4.4     Default of Indebtedness or Contracts.     Borrower is not in default and no Event of Default or event which after the expiration of any applicable grace or cure periods or the giving of notice or both, would constitute a default or Event of Default, has occurred and is continuing with respect to any contract entered into by Borrower or any indebtedness of any kind or nature including, without limitation, any mortgage, deed, loan agreement or other agreement relating to the borrowing of monies.

4.5     Financial Condition and Litigation. The financial statements of Borrower and Guarantors heretofore delivered, and as may be delivered during the term of the Loan, if any, to Lender

fairly present the financial condition of Borrower and Guarantors as of the dates thereof. If any Financial Statements have been requested by Lender and delivered prior to the date hereof, no material adverse change in Borrower's or Guarantors' financial condition or affairs has occurred. Except as previously disclosed in writing by Borrower to Lender, neither Borrower nor any Guarantor has any indebtedness. No proceedings, suits, orders, claims, investigations, or other actions are pending before any court or governmental authority or, to the best knowledge of Borrower or any of its Affiliates, after diligent inquiry, threatened against Borrower, which could materially adversely affect the assets, properties, business or condition, financial or otherwise, of Borrower, the Collateral of Borrower or materially adversely affect the ability of Borrower to perform any Obligations.

4.6     Title and Liens.  Except the liens and encumbrances discharged at the time of execution of this Loan Agreement, if any, and the funding of the Loan, Borrower has good and marketable title to all of its respective Property, assets and the Collateral, and the Collateral is not subject to any liens, claims, security interests, mortgages, pledges, charges or other encumbrance of any Person, except, with respect to the Collateral, Lender.

4.7     Information Warranties.  All information provided by Borrower, including, but not limited to, any information pertaining to the Guarantors, to Lender is true, correct and complete on the date hereof and, unless amended by Borrower with the consent of Lender, at all times hereafter.

4.8     Taxes.  Borrower has filed a federal, state, county, municipal, and other tax returns, reports and declarations required to be filed by all laws, have paid all taxes, including excise taxes, assessments, penalties, interest and any other governmental charges which are or were due and payable, unless Borrower is contesting in good faith, by an appropriate proceeding, the validity, amount or imposition of the above while maintaining reserves, deemed adequate by Lender in its sole and complete discretion, to cover the above, and such contest does not have or cause a material adverse change in Borrower's financial condition or operations and does not impair Borrower's ability to perform its Obligations, has made adequate provision for the payment of all taxes, assessments, penalties, interest and other governmental charges which are accruing but are not yet due and payable, and has no knowledge and is not aware of any deficiency or additional assessment which may have or has arisen in connection with the foregoing.

4.9     Compliance with Laws. No notice from any governmental body or other party has been served upon Borrower, claiming any violation of any laws, including, but not limited to, environmental laws, or requiring, or calling attention to themed for any material work, repairs, construction, alterations or installation on or in connection with the Vessel. Borrower has not received notice of any special tax assessment affecting the Vessel, or any of the Collateral.

4.10    Assumed Names. Neither Borrower nor any of the Guarantors are doing business under any name other than its corporate name or legal name as provided to Lender.

4.11    Regulations. Borrower confirms that: (a) the proceeds of the Loan are not being used to purchase or carry any "margin stock" within the meaning of Regulation "G", "U", or "I" of the Board of Governors of the Federal Reserve System, nor to extend credit to others for that purpose, and (b) each extension of credit secured by this Loan is exempt from the provisions of the United States Federal Consumers Credit Protection Act (Truth-In Lending Act) (the "Act") and Regulation "Z" of the Board of Governors of the Federal Reserve System (the "Regulation"), because Borrower is fully excluded from the Act and the Regulation, and because said extension of credit is only for business or commercial purposes of Borrower and the proceeds of the Loan are not being used for personal, family, household or agricultural purposes.

4.12    <u>No Options.</u> No Person has any option to acquire ownership of the Collateral or the Grandeur Vessel, or any portion thereof.

4.13.   <u>Membership Interest/Shares</u>. The names of the holders of the shares or equity ownership interests in Borrower are as provided to Lender, and there have been no changes or amendments thereto. None of the outstanding securities of Borrower have been issued in violation of any preemptive rights, rights of first refusal or similar rights.   There are no outstanding options, warrants, convertible securities, calls, rights, commitments, preemptive rights or agreements or instruments or understandings of any character, to which Borrower is a party or by which Borrower is bound, obligating  Borrower to issue, deliver or sell, or cause to be issued, delivered or sold, contingently or otherwise, additional shares of Borrower or any securities or obligations convertible into or exchangeable for such units or to grant, extend or enter into any such preemptive right or agreement.   There are no outstanding obligations, contingent or otherwise, of Borrower to purchase, redeem or otherwise acquire any shares of Borrower. There are no voting trust agreements or other contracts, agreements, arrangements, commitments, plans or understandings restricting or otherwise relating to voting, dividend or other rights with respect to Borrower's membership units or shares.

4.14    <u>Ship Mortgage.</u> The representations, warranties, covenants and conditions set forth in Lender's Mortgage and Deed of Covenants for the Vessel are incorporated herein by reference.

4.15    <u>Claims.</u>  As of the date hereof, there are no claims, filed or threatened against Borrower, the value of which exceeds Ten Thousand and 00/100 U.S. Dollars ($10,000.00).

4.16    <u>Title</u>. Borrower is the sole owner of the Vessel and has and shall have possession of the whole (100%) Vessel free from all liens, security interests or encumbrances whatsoever except for the security interests under this Agreement and the Loan Documents. If Lender has to establish or contest title in the Vessel, or defend its security interest or mortgage lien, Borrower shall be responsible for all of Lender's expenses and losses including, without limitation, legal fees and expenses, and Borrower shall indemnify Lender if anyone other than Borrower or Lender claims an interest in the Vessel or any part of it. Borrower will keep the Vessel free of any mortgages, security interests, liens or encumbrances except in favor of Lender.

V.    <u>Covenants.</u> Borrower hereby covenants and agrees that, until the Obligations and indebtedness of Borrower to Lender have been satisfied and discharged in full, Borrower will comply with the following covenants, unless Lender shall give its prior written consent to the contrary:

5.1    <u>Affirmative Covenants.</u>

    5.1.a    <u>Payments.</u> Borrower shall pay, or cause to be paid, when due all principal and interest under the Note and all other Obligations in respect with this Agreement, the Note and the other Loan Documents, including, but not limited to in the event of a mandatory prepayment as provided in <u>Section 2.6</u>.

    5.1.b    <u>Financial Information and Reporting.</u> Borrower and each Guarantor shall cause to be furnished to Lender:

        (i)    Promptly after notice of the commencement thereof, notice, in writing, of any actions, seizures, adverse claims, detentions, sequestrations, suits, arbitration or other proceedings instituted, commenced or to Borrower's or Guarantors' knowledge, threatened against or affecting Borrower, the Collateral, or any Guarantor;

(ii)     Promptly after the occurrence thereof, notice, in writing, of any other matter which has resulted in, or might result in, a materially adverse change in the financial or other condition of Borrower or Guarantors or their ability to fully perform their Obligations, under the terms and conditions of this Agreement and the Loan Documents or their ability to repay the Note;

(iii)    With reasonable promptness, such information respecting the business, properties or the condition or operations, financial or otherwise, of Borrower or any Guarantor, as Lender may from time to time reasonably request in writing; and

(iv)    Notice of any change in location of any place of business, the state of incorporation, the form of business entity, the legal name of Borrower or the jurisdiction of flagging of the Vessel at least thirty (30) days prior to such change (and no such change may be made without the prior written consent of Lender).

5.1.c.   Notice of Defaults and Potential Defaults.  Borrower agrees to promptly, and in no event more than three (3) days after it becomes aware of the occurrence thereof, inform Lender in writing, of any Events of Default or events which with the giving of notice or lapse of time or both, would constitute an Event of Default together with a description of the particulars thereof, how Borrower intends to cure or avoid the Event of Default and any writings or notices Borrower has received or generated in connection with the Event of Default or potential Event of Default.

5.1.d   Repair and Maintenance.  Borrower will maintain the Collateral, in good condition and repair and in proper working order, normal wear and tear excepted, and will pay and discharge, or cause to be paid and discharged, when due, the cost of repairs, replacement or maintenance to the foregoing and all rentals or mortgage payments on the foregoing (including, without limitation, the completion of customary annual inspection, periodic dry dock work and other routine maintenance, in accordance with generally accepted industry practices and procedures in the ship ownership and management industry and as required by the classification and regulatory authorities). In the event Borrower fails in the foregoing, Borrower hereby authorizes, without requiring Lender, to perform the same and to incur such reasonable costs, fees and expenses in connection therewith which shall be payable on demand by Borrower pursuant to Section 5.1 hereof.

5.1.e   Corporate Existence.  Borrower shall maintain and preserve its corporate existence, good standing, and certificates of authority, including, without limitation, all licenses, permits and authorizations necessary to do business in the Republic of the Marshall Islands and to own and operate the Vessel.

5.1.f   Lender Costs.  Borrower shall pay to Lender upon demand, all reasonable out-of-pocket fees, costs and expenses incurred or paid by Lender: (i) in connection with the repair and maintenance of Borrower's Property under Section 5.1.d hereof; (ii) in connection with the enforcement of its rights and remedies hereunder including, without limitation, the reasonable costs of attorney and paralegal fees; (iii) in connection with the inspection, sale, disposition or collection of or execution upon the Collateral; (iv) in notifying Account Debtors of Borrower or verifying the Accounts of Borrower; (v) in perfecting or protecting the Collateral security or security interest or lien(s) granted hereunder; and (vi) in connection with any litigation, contest, suit or proceeding (whether instituted by Lender, Borrower or where payment of the Obligations or the Collateral might be materially adversely

*affected,* by any other Person), including attorney's fees and costs at all pretrial, trial, and appellate levels, in any way relating to the Collateral, this Agreement and the Loan Documents, except where it is determined that Lender's action or failure to act constituted gross negligence or willful misconduct.

5.1.g   Indemnify and Release. Borrower agrees that it shall bear the risks of loss with respect to the Collateral and will indemnify Lender and hold Lender harmless from any and all claims, demands, liabilities, losses, damages, diminutions of value, costs and expenses relating to or in any way arising out of or from any possession, use, operation, control, sale, disposition or collection of any of the Collateral, except to the extent the foregoing are caused directly by Lender's gross negligence or willful misconduct. Borrower hereby releases Lender from any and all claims or causes of action, which Borrower may have, now or hereafter, relating to the foregoing, except those arising from Lender's gross negligence or willful misconduct.

5.1.h   Defense of Collateral.  Borrower shall pay, or cause to be paid, when due, all material indebtedness, lawful claims or demands with respect to the Collateral which, if unpaid, might result in, or permit the creation of, any lien or encumbrance on the Collateral, including, without limitation, all lawful claims for labor, materials and supplies, and, in general, do and cause to be done, everything reasonably necessary to fully preserve the rights and interests of Lender under this Agreement and the other Loan Documents. In addition, Borrower shall at all times defend Lender's rights and interests in and to the Collateral, and the first priority position of said rights and interests against any and all claims of any person adverse to Lender and take all necessary or appropriate actions to *give* effect to Lender's first priority of rights and interests contemplated by this Agreement and the other Loan Documents.

5.1.i   Automatic Debit. Intentionally deleted.

5.1.j   Assignment of Maintenance and Service Contracts. Borrower hereby absolutely and irrevocably assigns and transfers to Lender all of Borrower's right, title and interest in and to a maintenance, service or other third-party contracts affecting the Collateral. Borrower irrevocably appoints Lender its true and lawful attorney-in-fact, at the option of Lender at any time and from time to time, to demand, receive and enforce Borrower's rights thereunder. This assignment and transfer shall remain in full force and effect until the Obligations have been paid in full, provided that in the event payment to Lender of the Obligations should in any way be "clawed back" under any theory of bankruptcy, insolvency, or similar law, then this assignment will continue in full force and effect.

5.1.k   Insurance. Borrower will maintain in full force and effect fire, theft, and "all risk" marine hull and machinery and protection and indemnity insurance on the Vessel, and such other insurance covering such risks and perils, upon such terms and in such amount and with such endorsements as Lender may reasonably require, including, without limitation, pollution and environmental coverage, as well as seizure coverage on the Vessel. In addition to protecting Borrower, the insurance must protect Lender as a loss payee and as an additional insured (without liability for payment of premium), but only to the extent that the insurance company agrees to list Lender as an additional insured, and must be written for at least one year at a time. The amount of Borrower's marine hull and machinery insurance shall not be less than the purchase price of the Vessel under the PSA, the market value of the Vessel or 100% of the Loan amount, whichever is greater (except as otherwise restricted by law), or unless otherwise agreed in writing by Lender. The underwriter and maximum deductible on Borrower's insurance must be reasonably satisfactory

to Lender. Lender may sign any proof of loss and endorse any check, draft, or other form of payment issued by the insurance company or its agent as a loss payment, and Borrower hereby appoints Lender as Borrower's attorney-in-fact for this purpose. This power of attorney shall not be affected by Borrower's disability. Proceeds of the insurance may be used either to repair the Vessel or to reduce the Indebtedness, in Lender's discretion. If Borrower's insurance lapses or is canceled at any time before the Loan is fully paid and performed, Lender must be given prompt notice of said lapse or cancellation. In the event of lapse or cancellation, or in the event of Borrower's failure to pay any premiums when due or otherwise to provide or maintain insurance coverage, subject to the notice and cure provisions of <u>Section 7.11</u> below, Lender may, but is not obligated to, buy replacement coverage protecting Borrower and Lender or Lender alone. In such event, Borrower will repay the premiums at Lender's request with interest at the rate in effect under the Note.   Borrower shall procure breach of warranty endorsements or separate Lender's single interest coverage in an amount at all times equal to or greater than Borrower's indebtedness to Lender as set forth in the Note, such that no act or omission of Borrower, or any charterer, or breach of any warranty, including breach of any warranty of seaworthiness, whether express or implied, shall operate to forfeit Lender's coverage under the above policies or result in a cancellation of insurance as to Lender.

5.1.l  <u>Seizure</u>. If the Vessel shall at any time, while subject to the lien hereof, be libeled, seized, detained, levied or attached under process or color of legal authority for any cause whatsoever (individually or collectively the "<u>Seizure</u>"), Borrower will within forty-eight (48) hours of the Seizure notify Lender in writing and, without expense to Lender, within fourteen (14) days from the Seizure, either cause the Vessel to be released by filing an undertaking or stipulation or otherwise as may be lawfully permitted or furnish Lender additional security of a value acceptable to Lender. If Borrower shall fail or neglect to furnish additional security to Lender or otherwise to release the Vessel from the Seizure, Lender may (but need not) furnish security to release the Vessel, and if, as a result of the Seizure, the Vessel shall be sold at a marshal's sale or otherwise under legal process, any insurance money, excess proceeds and other sums recoverable with respect to the Vessel shall be paid to Lender and shall be applied against the indebtedness. In the event of a Seizure, Borrower authorizes Lender to disclose any information which Lender deems necessary to protect Lender's interest in the Vessel and Borrower further authorizes Lender or Lender's agents in Borrower's name and as Borrower's attorney in fact to: (i) receive or take possession of the Vessel; (ii) defend any action and/or discharge any lien; and (iii) refer the protection of Lender's interest to an attorney who is not Lender's salaried employee and receive from Borrower reasonable attorneys' fees. This power of attorney shall not be affected by Borrower's disability.

5.1.m  <u>Operation of Vessel</u>. The Vessel shall always be under the command of a master licensed by or having a certificate of competence issued by a country acceptable to the Jamaica maritime authorities, and who meets the requirements of the Vessel's insurance policy.

5.1.n  <u>Registration of Vessel</u>.  The Vessel will, at all times during the term of the Loan, be properly registered, and such registration will be effective at all times during the term of the Loan, with the Jamaica Ship Registry, unless otherwise previously agreed to by Lender in writing. Borrower will maintain and keep, at all times during the term of the Loan, on the Vessel, all necessary and required documentation, certificates and other documents as required by the Jamaica Ship Registry (or applicable law.

5.1.o   <u>Annual Inspection of Vessel.</u>  At least once every calendar year, Lender shall have the right to inspect the Vessel.  Borrower shall make the Vessel available to Lender for inspection upon reasonable notice.  All costs associated with the inspection shall be borne and paid for by Borrower, including but not limited to transportation and lodging costs for Lender's inspector.

5.1.p   <u>Vessel Tracking Equipment.</u>  Borrower shall throughout the term of this Loan install and maintain an Automatic Identification System for marine tracking ("<u>AIS</u>") on the Vessel so that the Vessel's location is always transmitted and available to Lender. Any disablement of the AIS during the term of this Loan shall be deemed a material breach of this Agreement by Borrower, except for instances where the system may be taken offline to be upgraded or repaired (or short-term temporary malfunction), and in instances approved by Lender, in writing.

5.1.q   <u>Intentionally deleted.</u>

5.2   <u>Negative Covenants.</u>

5.2.a   <u>Debt</u>.  Borrower shall not, directly or indirectly, create, assume, incur, become or be liable for or with respect to any manner of obligations, subordinate loans, liabilities or indebtedness whatsoever to any Person, or by way of any guaranty that may give rise to a lien, security interest, or other encumbrance that is superior in priority to the Mortgage against the Vessel.

5.2.b   <u>False Statements</u>. Borrower will not furnish Lender any certificate or other document that contains any untrue statement of material fact or that will omit to state a material fact necessary to make it not misleading in light of the circumstances under which it was furnished.

5.2.c   <u>Name Changes.</u>  Borrower shall not, without Lender's prior written consent: (i) change Borrower's corporate name or adopt an assumed corporate name, change Borrower's jurisdiction of incorporation or corporate or organization structure, or change its organizational identification number; (ii) sell a substantial portion of its assets; (iii) change the name of the Vessel; nor (iv) register the Vessel in a jurisdiction other than Jamaica.

5.2.d   <u>Guaranties.</u>  Borrower shall not guarantee, assume, endorse or otherwise, in any way, become directly or contingently liable in any manner with respect to the obligations or liabilities of any Person, except by endorsement of instruments or items for payment or deposit or collection or as required pursuant hereto or the other Loan Documents.

5.2.e   <u>Capital/Ownership Structure.</u>  Without the prior written consent of Lender, Borrower shall not make any material change in its capital structure or in the ownership structure of Borrower.

5.2.f   <u>Use of Vessel</u>.  Borrower hereby agrees, represents and warrants that the Vessel is not and shall not be used as Borrower's principal dwelling place.  **Borrower must not charter the Vessel (bareboat or otherwise), or otherwise carry passengers for hire, in any manner without the written consent of the Lender in U.S. waters.  However, the Vessel may be chartered outside of U.S. waters if allowed by the Vessel's flag state and insurance.**  The Vessel may be operated only within the geographical limits and other requirements of the marine insurance covering the Vessel, as may be amended from time to time.  Borrower shall keep all dockage charges current.  Borrower shall not use, nor allow the use of, the Vessel for any illegal purpose or contrary to any provision of the laws, treaties, regulations or orders of Jamaica and the United States or other jurisdiction in which the Vessel is operated.  If Borrower takes the Vessel to another country, it will comply with all pertinent treaties between Jamaica, the United States and such country, and all

laws and applicable regulations of such country.  The illegal commerce in, or possession, carriage, or use of any firearms or controlled substance whatsoever on or about the Vessel is absolutely prohibited.

5.2.g   Change of Address or Location of Vessel.  Borrower will not, without Lender's prior written consent, move the Vessel from the place(s) as stated in the Loan Documents where it is customarily moored in the summer or stored in the winter, as the case may be, or from the State of the Vessel's principal use, other than for voyages with the intent of returning. Borrower agrees to inform Lender within thirty (30) days if Borrower changes Borrower's name, identity, ownership, membership or structure in any manner.  Borrower will notify Lender promptly if Borrower changes Borrower's principal residence or place of business. Borrower agrees that any and all notices sent by Lender to the address listed herein for Borrower, or the last known address of record for Borrower, shall constitute adequate notice to Borrower for all purposes.

5.2.h.   Restrictions on Sale, Charter or Use of Vessel.  Borrower will not, without Lender's prior written consent, sell or mortgage the Vessel, pledge it as security for another loan, give it away, lease, charter, carry passengers for hire, or otherwise use it in a manner or for purposes contrary to those specified in this Agreement.  **Borrower shall not charter (bareboat or otherwise) the Vessel, or otherwise carry passengers for hire, in any manner without the written consent of the Lender, in U.S. waters.  However, the Vessel may be chartered outside of U.S. waters if allowed by the Vessel's flag state and insurance, it being agreed to, however, that all charters entered into by the Borrower are to be crewed charters (no bareboat charters) in full compliance with all applicable laws and regulations as well as with the Vessel's insurance.**

5.2.i.   Dividends.  Borrower will not, without Lender's prior written consent, in Lender's absolute discretion, declare or pay any dividends or purchase, redeem, retire, or otherwise acquire for value any of its membership interests now or hereafter outstanding; or make any distribution of assets to its officers, directors, managers or members as such whether in cash, assets, or in obligations of any subsidiary; or allocate or otherwise set apart any sum for the payment of any dividend or distribution on, or for the purchase, redemption, or retirement of any shares/ membership interests; or make any other distribution by reduction of capital or otherwise in respect of any shares of its capital stock; or permit any of its Affiliates to purchase or otherwise acquire for value any stock of its subsidiaries; or pay any bonuses to officers, directors, managers,  members or stockholders; or repay any loans from any officers, directors or members; or make any loans to any officer, director, manager or member.

VI.   Collateral Security

6.1   Creation of Security Interest.  In consideration of the extension of credit as described in the Note and as security for payment of all that is owed under the Note, Borrower hereby grants to Lender a security interest in the Collateral.

6.2.   Security Agreement.  Borrower agrees that a Mortgage, or its equivalent in applicable jurisdictions, on the Vessel in Lender's favor will be filed and recorded with the relevant authorities.  Borrower agrees to cooperate in regard to and pay all costs of documentation and filing and recording the Mortgage on the Vessel in Lender's favor.  In addition, Lender may require that Borrower register the Vessel with the appropriate authority in the state or territory of principal use and that Lender's security interest be perfected under state or territory law, whether through filing of a financing statement or notation on a certificate of title, or both.  Borrower agrees to cooperate in regard to any and pay all costs of registration of the Vessel and perfection of Lender's security interest under applicable law.  Borrower specifically authorizes Lender to file financing statements without Borrower's signature in any locations Lender deems necessary.  Borrower also agrees to pay all applicable taxes

and other fees due and owing under the laws of any state or territory with respect to the Vessel, its purchase and use, including but not limited to the state or territory of the Vessel's principal use. Lender may, but is not obligated to, pay these amounts for Borrower. If Lender does pay these amounts, Borrower agrees to repay Lender on demand, with interest at the rate provided in this Agreement.  Borrower agrees that such amount will be secured by the security interest Borrower has granted to Lender.  Lender agrees it will provide Borrower with written notice if Lender elects to file any additional financing statements in connection with the Loan.

6.3.   <u>Preservation of Collateral.</u> Lender may, but is not required to, take such action from time to time as Lender reasonably deems appropriate to maintain or protect the Collateral.

6.4   <u>Other Actions as to any and all Collateral.</u> Borrower further agrees to take any other action reasonably requested by Lender to ensure the attachment, perfection and first priority of, and the ability of Lender to enforce, Lender's security interest in any and all of the Collateral including, without limitation, (a) executing, delivering, and where appropriate, filing financing statements and amendments, relating thereto under the Uniform Commercial Code in any state Lender deems appropriate, to the extent, if any, that Borrower's signature thereon is required therefor, (b) causing Lender's name to be noted as secured party on any certificate of title for a titled good if such notation is a condition to attachment, perfection or priority of, or ability of Lender to enforce, Lender's security interest in such Collateral, (c) complying with any provision of any statute, regulation or treaty of Jamaica, the United States, or with other laws as applicable in any foreign jurisdiction, as to any Collateral if compliance with such provision is a condition to attachment, perfection or priority of, or ability of Lender to enforce, Lender's security interest in such Collateral, (d) obtaining Jamaica, U.S., and foreign governmental and other third party consents and approvals required, including without limitation, any consent of any licensor, lessor or other Person obligated on Collateral, (e) obtaining waivers from mortgages in form and substance reasonably satisfactory to Lender, and (f) taking all actions required by the Uniform Commercial Code, or by other law, as applicable, in any relevant jurisdiction, or by other law as applicable in any foreign jurisdiction.

VII.   <u>Events of Default</u>.   The following shall constitute and be deemed Events of Default hereunder:

7.1   <u>Payment of Obligations</u>. Failure by Borrower to make any payment or pay any sum when due under the Note, this Agreement, or any of the Loan Documents.

7.2   <u>Performance Obligations</u>. Failure by Borrower or any Guarantor to perform, keep or observe any covenants, warranties, promises or agreements hereunder or under the Note or any other Loan Documents, including any mortgage, and such failure shall continue for a period of fifteen (15) days after Lender's written notice to Borrower of the occurrence thereof; provided, however, that the fifteen (15) day cure period provided by this <u>Section 7.2</u> shall not apply to the specific Events of Default set forth in the remainder of this <u>Section 7</u>.

7.3   <u>Representation and Warranties</u>. Any warranty or representation now or hereafter made by Borrower hereunder or by any other party to the Loan Documents under the Loan Documents, is untrue or incorrect in any material respect or fails to state a material fact necessary to make such warranty or representation not misleading in light of the circumstances in which it was made, or any schedule, certificate, statement, report, financial data, notice or writing furnished to Lender at any time by Borrower or by a party or signatory to the Loan Documents is untrue or incorrect in any material respect or fails to state a material fact needed to make the foregoing not misleading in light of the circumstances in which the foregoing were furnished, on the date as of which the facts set forth therein are stated or certified.

7.4     <u>Judgments</u>. Any judgments or orders requiring, individually or in the aggregate, payment of monies in excess of $5,000.00 which is not covered by insurance, shall be rendered against Borrower, and such judgments or orders shall remain unsatisfied or undischarged and in effect for thirty (30) consecutive days without a stay of enforcement or execution thereof.

7.5     <u>Government Action.</u>  If any proceeding is instituted or commenced by any state or officer thereof, or relevant foreign government or officer thereof, seeking a forfeiture, suspension, termination or revocation of Borrower's certificate or articles of incorporation, and Borrower shall fail to vacate any order or action entered in such proceeding within thirty (30) days.

7.6     <u>Change in Management or Control.</u>  Guarantors shall cease to own beneficially or directly control at least fifty-one percent (51%) of the issued and outstanding shares or membership interest of Borrower.

7.7     <u>Insolvency and Related Proceedings</u>. If Borrower: (i) authorizes or makes an assignment for the benefit of creditors; (ii) generally shall not pay its debts as they become due; (iii) shall admit in writing its inability to pay its debts generally as they come due; or (iv) shall authorize or commence (whether by the entry of an order for relief or the appointment of a receiver, trustee, examiner, custodian or other similar official therefor or for any part of its property) any proceeding or voluntary case under any bankruptcy, reorganization, insolvency, dissolution, liquidation, adjustment or arrangement of debt, receivership or similar laws or if such proceedings are commenced or instituted, or an order for relief or approving any petition commencing such proceedings is entered against Borrower, and Borrower, by any action or failure to act, authorizes, approves, acquiesces, or consents to the commencement or institution of such proceedings, and such proceedings are not dismissed within forty five (45) days after the date of filing, commencement or institution.

7.8     <u>False Statements.</u> Borrower or any Guarantor has made a false or misleading statement about any fact on this Agreement, application for credit, or any of the Loan Documents.

7.9     <u>Material Adverse Change.</u>   The occurrence of any event or condition which has or could reasonably be expected to have a material adverse effect on the operations or financial condition of Borrower or any Guarantor, or on Lender's prospect of payment, performance or ability to realize upon the Collateral, taken as a whole, as determined by Lender in its reasonable discretion.

7.10    <u>Tax Liens.</u> If a notice or notices of lien, levy or assessment in excess of $5,000.00, individually or in the aggregate, is filed or recorded with respect to all or a substantial part of the Collateral owned by Borrower by Jamaica, the United States, or any department, agency or instrumentality thereof, by any foreign government, or by any state, county, municipality or other governmental agency, or any taxes or debts owing at any time or times hereafter to anyone or more of the foregoing in excess of $5,000.00 should become a lien, upon all or a substantial part of the Collateral owned by Borrower, unless such notice or lien is removed within thirty (30) days after filing or recording of such notice or becoming such lien.

7.11    <u>Insurance</u>. If any insurer of any policy of insurance respecting a material portion of the Collateral issues any notice of cancellation of such a policy which is not cured or such coverage replaced within ten (10) days after such notice is issued, or any such policy is allowed to lapse and is not replaced by a substitute policy having an effective date prior to or contemporaneous with such cancellation or lapse.

7.12    <u>USA Patriot Act Disclosure.</u>  Borrower fails to furnish Lender information sufficient to verify Borrower's identity as required under the USA Patriot Act or any documentation reasonably requested by Lender for compliance with the USA Patriot Act.

7.13    <u>The Vessel.</u>   There shall have occurred the execution of process, arrest, seizure, notice of claim of lien or forfeiture against the Vessel, or the Vessel shall be made the subject of legal proceedings, and its continuance for more than fourteen (14) days without bonding or other release thereof.  It shall also be an Event of Default for Borrower to allow the Vessel to lessen in value, other than through normal depreciation, such that Lender believes in good faith that Lender's interest is no longer adequately protected.

7.14    <u>Guarantors.</u> Any of the Guarantors of the Obligations dies, become insolvent or incompetent or breaches the terms of its/his/her guaranty, unless the amount of its/his/her guaranty is paid and the Loan principal is reduced by the amount of such payment or other Guarantor or a new guarantor, in each case acceptable to Lender, assumes the guaranty obligations of the Guarantor that dies, becomes insolvent or incompetent or breaches the terms of its/his/her guaranty.

VIII.   <u>Rights and Remedies of Lender.</u>

8.1     <u>Termination of Commitment and Acceleration.</u> Upon the Maturity Date, the Loan shall be automatically due and payable without any action, presentment, demand, protest or notice of any kind. Upon the happening or occurrence of any Event of Default set forth in Article VII, or an Event of Default under any of the Loan Documents, such Event of Default not having been previously cured by Borrower or waived in writing by Lender, Lender, may, at its sole and complete discretion and option, declare the Note due and payable without any presentment, demand, protest, notice of any of the foregoing or other notice of any kind, all of which are hereby expressly waived notwithstanding anything contained herein or in the Note to the contrary. Upon the occurrence of any Event of Default, Lender shall have all rights and remedies now or hereafter provided by applicable laws and without limiting the generality of the foregoing, may, at its option, also appropriate and apply toward the payment of each Note, any indebtedness of Lender to Borrower, howsoever, created or arising, and may also exercise any and all rights and remedies hereunder, under the Loan Documents, or in and to the collateral security referred to in Article VI hereof, including, without limitation, the Collateral of Borrower.

8.2     <u>Other Remedies Upon Default.</u> Upon an Event of Default, Lender may do any one or more of the following with or without prior notice to Borrower or demand for performance, except as may be required by applicable law: a) intentionally deleted; b) demand that Borrower assemble and deliver the Vessel to Lender at such location as Lender may reasonably require (however, Borrower's delivery of the Vessel will not relieve Borrower of Borrower's obligation to satisfy any deficiency which may arise upon the subsequent sale or other disposition of the Vessel); c) lawfully enter any premises where the Vessel may be located and repossess the Vessel, with or without judicial process or judicial decree; d) sell or otherwise dispose of the Vessel; e) bring suit at law, in equity, or in admiralty to foreclose Lender's security interest and/or recover judgment for any and all amounts due under this Agreement; f) pursue any other remedy provided to Lender under any applicable law or other Loan Document; g) require that Borrower pay court costs and any reasonable amount spent for repossessing, storing, preparing for sale, or selling the Vessel, and any and all other foreclosure costs to the extent permitted by applicable law; and h) keep the Vessel for its own use.

8.3     <u>Rights of Secured Creditor.</u> Lender shall have, in addition to the rights and remedies given to it under this Agreement, the Note and the Loan Documents, all of the rights and remedies of a secured party under the Uniform Commercial Code as enacted in any jurisdiction in which any of the Collateral of Borrower may be located, all rights and remedies of a

mortgagee under the Mortgage, and all rights and remedies allowed by all applicable Laws, all of which rights and remedies shall be cumulative and non-exclusive, to the extent permitted by said laws. All risk of loss, damage or diminution of value with respect to each Borrower's Collateral shall be borne by Borrower at all times and Lender shall have no responsibility, liability or obligation to Borrower therefor except as a result of Lender's gross negligence or willful misconduct.

8.4    <u>Disposition of Vessel; Application of Proceeds</u>. (a) If Lender repossesses the Vessel without judicial process, Lender may, in Borrower's name or in Lender's name, sell, lease, charter, operate or otherwise use the Vessel as Lender deems advisable, without being responsible for loss or damage, and Lender may keep the Vessel at Borrower's premises or elsewhere, at Borrower's expense.  For this purpose and subject to any applicable state regulation, Lender is irrevocably appointed Borrower's true and lawful attorney-in-fact to make all necessary transfers of the Vessel, to pay, defend or obtain the release of all maritime liens, to waive and release any warranties at disposition, and to take all related actions in Borrower's name and stead as may be necessary and appropriate to enforce Lender's rights under this Agreement. (b) The proceeds of sale or other disposition of the Vessel shall be applied in accordance with applicable law.  To the extent permitted by applicable law, any late charges, costs of retaking the Vessel, storage, costs of sale including but not limited to cleaning, repairing and/or maintenance expenses, auctioneer's fee, sales commission, if any, and advertising, insurance, allowable attorneys' fees, collection costs, court costs, and any other necessary expenses will be paid first from the proceeds of the sale or other disposition of the Vessel.  Next, all accrued interest to date of payment and any and all other sums (other than principal) due pursuant to the terms of this Agreement shall be paid.  Finally, the outstanding principal shall be paid.  Any surplus of proceeds of sale or disposition of the Vessel over the amounts of such charges and expenses and amounts owed to Lender shall be paid to Borrower to the extent that such surplus is not required to be paid to other persons with liens on the Vessel.  To the extent permitted by applicable law, Borrower shall be liable for any deficiency.

8.5    <u>Entry on Premises</u>.   Upon the occurrence of an Event of Default, Lender shall have the right to enter upon the premises of Borrower or any Guarantor where the Collateral of Borrower is located or believed to be located, and to enter Borrower's Vessel, without any obligation to pay rent or hire to a Borrower or any responsibility or liability to a Borrower for safeguarding said Collateral from loss or damage or diminution in value, except if caused by Lender's gross negligence or willful misconduct, and render said Collateral unusable or remove said Collateral therefrom to the premises of Lender or any agent of Lender, for such time as Lender may desire in order to effectively value, collect or liquidate said Collateral.

IX.    <u>Miscellaneous</u>

9.1    <u>Waiver</u>. Lender's failure, at any time or times hereafter, either to require strict performance by Borrower of any provisions of this Agreement, the Note or any Loan Documents, or to enforce Lender's rights under such terms or provisions, shall not waive, effect or diminish or modify such terms or provisions, notwithstanding any conduct or custom, actual or implied, of Lender to the contrary or in refraining from so doing at any time or times. Any suspension or waiver by Lender of an Event of Default hereunder or under any Loan Documents or right or remedy hereunder or under any Loan Document shall not suspend, waive, release or affect any other Event of Default or right or remedy hereunder or under any Loan Documents. No Obligations of Borrower, Events of Default or right or remedy hereunder or under any Loan Documents shall be deemed suspended or waived by Lender unless such suspension or waiver is in writing signed by a duly authorized officer of Lender and directed to Borrower detailing such suspension or waiver.

9.2   <u>Applicable Law; Venue; Service of Process</u>. This Agreement and any related Loan documents shall be governed, enforced and construed in accordance with the laws of the State of Florida, without regard to any laws, rules or regulations concerning conflict of laws that might result in the application of the laws of any other jurisdiction.  Provided, that matters pertaining to the perfection of liens and the enforcement of remedies with respect to Collateral shall be governed by the laws of the jurisdiction where the Mortgage is filed or the Collateral is located, as applicable, to the extent such local laws are mandatorily applicable to such issues.

Notwithstanding the foregoing, Lender reserves the right to exercise any of the remedies available to a secured lender under the laws of, including the maritime laws or Uniform Commercial Code or other laws of similar effect as adopted in, or as may apply in Jamaica, the United States, or any place where Borrower is registered, maintains a place of business, or any place where the Vessel or any of the Collateral may be located, including, without limitation, the remedy of non-judicial repossession and sale.

Any legal action or proceeding with respect to this Loan Agreement or any related document may be brought in the courts of the State of Florida in and for Miami-Dade County or the Federal Courts of the United States for the Southern District of Florida, and by execution and delivery of this Agreement, Borrower and Lender consent to the non-exclusive jurisdiction of those courts. Borrower and Lender irrevocably waive any objection, including any objection to the laying of venue or based on the ground of forum non conveniens, which it may now or hereafter have to the bringing of any action or proceeding in such jurisdiction in respect of this Agreement or any document related hereto.  Notwithstanding the foregoing, (i) Lender shall have the right to bring any action or proceeding against Borrower, any Guarantor, or their property in the courts of any other jurisdiction Lender may deem necessary and appropriate in order to enforce its rights and remedies under the Loan Documents or any related documents, and (ii) Lender and Borrower each acknowledge that any appeals from the aforesaid courts may have to be heard by a court located outside the jurisdiction of such courts.

BORROWER HEREBY IRREVOCABLY APPOINTS SILVERMAN THOMPSON, 400 E. PRATT ST SUITE 900, BALTIMORE, MD 21202, AS AGENT FOR SERVICE OF PROCESS FOR THE PURPOSES HEREOF.  BORROWER HEREBY AGREES THAT THE LENDER MAY EFFECT SERVICE OF PROCESS UPON THE UNDERSIGNED BY MAILING PROCESS VIA MAIL OR COURIER TO SILVERMAN THOMPSON, 400 E. PRATT ST SUITE 900, BALTIMORE, MD 21202, ATTN: STEVEN N. LEITESS, ESQ. BORROWER IRREVOCABLY WAIVES PERSONAL SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER PROCESS.  NOTHING IN THIS AGREEMENT WILL AFFECT THE RIGHT OF LENDER TO SERVE PROCESS IN ANY MANNER PERMITTED BY APPLICABLE LAW.

9.3   <u>Severability; Amendment</u>. This Agreement, the Note and the Loan Documents shall be construed and interpreted in such manner as to be effective, enforceable and valid under all applicable laws. If any provision of this Agreement, the Note or the Loan Documents shall be held invalid, prohibited or unenforceable under any applicable laws of any applicable jurisdiction, such invalidity, prohibition or unenforceability shall be limited to such provision and shall not affect or invalidate the other provisions hereof or thereof or affect the validity or enforceability of such provision in any other jurisdiction, to the extent the provisions hereof and thereof are severable.  No amendment of this Agreement will be valid unless in writing and signed by Borrower and by a duly authorized officer of Lender.

9.4   <u>Counterparts; Section Headings; Binding Effect</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. Section headings used in this Agreement are for convenience only and shall not affect the construction or interpretation

of this Agreement. This Agreement shall be binding upon and inure to the benefit of Lender and Borrower, and their respective heirs, executors, administrators, personal representatives, successors and assigns; provided, however, that Borrower has no right to assign any of his or her rights or Obligations hereunder without the prior written consent of Lender.

9.5     Notices. Any notices or consents required or permitted by this Agreement shall be: (i) in writing, (ii) delivered in person, or sent by nationally recognized overnight courier or certified or registered mail, postage prepaid, return receipt requested, to the address set forth below, unless such address is changed by written notice hereunder, and (iii) deemed duly given upon compliance with the above when sent by Lender to Borrower or upon actual receipt of notice when sent by Borrower to Lender.

(i)     If to Borrower:

AVYC, LLC
2 Compromise St
Annapolis, MD 21401
Attn: Legal
Tel: 410-212-9937
Email: pbh@avyc.com

With copies to:

_____
_____
_____
_____

(ii)    If to Lender:

Sweet Caroline Marine Ltd.
c/o Robert Allen Law
1441 Brickell Avenue, Suite 1400
Miami, FL 33131
Attention: Adrian Z. Karborani and Claudia Casalis
akarborani@robertallenlaw.com; ccasalis@robertallenlaw.com

9.6.    Waiver of Jury Trial. BORROWER (AND EACH GUARANTOR) AND LENDER BY ACCEPTANCE OF THIS AGREEMENT, KNOWINGLY, VOLUNTARILY AND WITH ADVICE OF COUNSEL, HEREBY WAIVE THE RIGHT TO A TRIAL BY JURY IN OR WITH RESPECT TO ANY PROCEEDING ARISING OUT OF, UNDER OR IN CONNECTION WITH THE NOTE, THIS LOAN AGREEMENT, OR GUARANTY, OR WITH RESPECT TO DEALINGS BETWEEN LENDER AND BORROWER OR GUARANTORS CONCERNING ANY COURSE OF CONDUCT, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO PROVIDE CREDIT TO BORROWER.

9.7     Disclaimer of Consequential Damages.   IN NO EVENT SHALL LENDER OR ITS OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, ATTORNEYS AND AFFILIATES, BE LIABLE FOR INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING WITHOUT LIMITATION, LOSS OF PROFITS, ARISING OUT OF THIS AGREEMENT, THE OTHER LOAN DOCUMENTS, THE COLLATERAL OR THE LOAN.

9.8 <u>Interpretation</u>. In the event of any conflicting terms, conditions, or requirements under any of the Loan Documents, the Loan Agreement shall control, except that the Mortgage and Deed of Covenants shall be governed by the laws of Jamaica. Each party has participated in negotiating and drafting this Agreement and each of the Loan Documents, so if an ambiguity or a question of intent or interpretation arises, this Agreement and each of the Loan Documents are to be construed as if the parties had drafted such jointly, as opposed to being construed against a party because it was responsible for drafting one or more provisions of this Agreement or the Loan Documents.

9.9 <u>Further Assurances.</u>  From time to time, Borrower shall sign and deliver to Lender such other and further documents and assurances as Lender may require to maintain the priority of this Agreement, the Mortgage and any other security interest Lender has in the Vessel or the Collateral.

9.10 <u>Actions Taken on Behalf of Borrower</u>. If Borrower fails to do anything Borrower is required to do under this Agreement or any other agreement with Lender, subject to applicable notice and cure periods, such as to discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Vessel, place and pay for any insurance thereon, order and pay for the repair, maintenance and preservation thereof or pay any necessary recording or filing fees, Lender may, in its sole discretion and without further obligation, take these acts on Borrower's behalf as Lender deems appropriate. These amounts so expended will be added to the unpaid portion of the principal indebtedness and the rate of interest accruing on the unpaid principal will be applied until Borrower fully repays Lender. Lender may, but is not obligated to, increase the amounts of Borrower's payments under this Agreement to cover the resulting total unpaid balance. Borrower agrees to make those new payments amounts if so notified by Lender. Lender's security interest in the Vessel shall also secure these amounts. Lender is under no obligation to purchase insurance to protect Borrower's interest in the Vessel or Collateral, or to otherwise satisfy any legal requirement such as se for liability insurance covering personal injury and property damage to others.

9.11 <u>Patriot Act Notice.</u> To help fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account.

[Signature Page Follows]

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day and year first above written and in Borrower's case, under penalties of perjury.

**BORROWER:**

**AVYC, LLC,** a Republic of the Marshall Islands Limited liability company

Witness One:

Signature: _____
Print Name: Liam Hart

By: _____
Patrick T Britton-Harr, Managing Member

Witness Two:

Signature: _____
Print Name: Noah Blauker

<u>ACKNOWLEDGEMENT</u>

STATE OF MARYLAND          )
                           )
COUNTY OF ANNE ARUNDEL     )

BEFORE ME this 28TH day of June, 2023, personally appeared Patrick T Britton-Harr, who by means of ☑ physical presence or ☐ online notarization, acknowledged and executed the foregoing instrument before me, under the penalty of perjury, as Managing Member of AVYC, LLC, a Republic of the Marshall Islands limited liability company (the "Company"), on behalf of the Company. He is personally known to me or has produced a _PASSPORT_ as identification.

[NOTARIAL SEAL]

PHILIP WELBORN
NOTARY PUBLIC
ANNE ARUNDEL COUNTY
MARYLAND
MY COMMISSION EXPIRES APRIL 19, 2027

_____
NOTARY PUBLIC SIGNATURE

[ACKNOWLEDGEMENT CONTINUES ON FOLLOWING PAGE]

**AGREED AND ACCEPTED:**

**Sweet Caroline Marine Ltd., a Republic of the Marshall Islands company**

By:_____

Name:_____

Title:_____

**EXHIBIT "A"**
**PROMISSORY NOTE**

## PROMISSORY NOTE

**THIS IS A BALLOON NOTE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $12,200,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY.**

$13,800,000.00                                                                                     June 28, 2023

FOR VALUE RECEIVED, **AVYC, LLC**, a Republic of the Marshall Islands limited liability company ("Borrower") promises to pay to the order of **SWEET CAROLINE MARINE LTD.**, a Republic of the Marshall Islands company, and its successors and assigns as their interests may appear ("Lender"), at its office at c/o ROBERT ALLEN LAW, P.A., 1441 Brickell Ave., Ste. 1400, Miami, FL 33131, or at such other place as Lender may direct from time to time in writing as set forth herein, the sum of **THIRTEEN MILLION EIGHT HUNDRED THOUSAND AND 00/100 US DOLLARS ($13,800,000.00)** (the "Loan"), together with accrued and unpaid interest thereon to be paid as required by the terms of this promissory note (the "Note"). This Note is executed by Borrower in conjunction with that certain Loan Agreement, dated as of even date herewith, between Lender and Borrower (the "Loan Agreement"). Capitalized terms not otherwise defined herein shall have the meaning given to such terms in the Loan Agreement.

**Interest Rate**. Interest on this Note shall accrue from and after June 29, 2023 at an annual fixed rate equal to eighteen percent (18%). NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum interest rate allowed by applicable law. Interest shall accrue daily and be calculated on the basis of a 365-day year and the actual number of days elapsed in any partial calendar month.

**Payment and Maturity Date**. Borrower shall make payments of principal and interest as follows:

    **(a)**    On the 1st day of each month, from September 1, 2023 through December 1, 2024, Borrower shall make consecutive monthly installments of principal in the amount of One Hundred Thousand and 00/100 U.S. Dollars ($100,000.00) per month;

    **(b)**    On January 1, 2025 (the "Maturity Date"), Borrower shall pay the entire unpaid principal amount plus any outstanding interest and fees accrued, unless sooner accelerated pursuant to this Note or other Loan Documents, including, but not limited to the events of mandatory prepayment listed in Section 2.4 of the Loan Agreement. **THIS IS A BALLOON NOTE. Notwithstanding anything to the contrary herein, provided the Borrower makes the principal payments as set forth herein and satisfies the loan on the Maturity Date, no interest shall be due.**

All payments on account of the indebtedness evidenced by this Note shall be applied first to outstanding costs and fees of Lender, then to accrued and unpaid interest and the remainder to principal.

This Note is subject to the terms and conditions of the Loan Agreement, the Mortgage, the Deed of Covenants and is secured by the security interests and liens granted thereunder and pursuant to other documents, agreements, and instruments executed in connection with the Loan Agreement by the Borrower and/or Guarantors of Borrower (as amended, the "Loan Documents"). This Note is made and delivered pursuant to the Loan Agreement, Mortgage, Deed of Covenants and other Loan Documents, and is subject to the further terms and conditions thereof, including the right of the holder to accelerate payment of the principal of and accrued and unpaid interest on this Note and to exercise other remedies upon the occurrence of an Event of Default and the required prepayment of principal of this Note upon certain other events or conditions, all of which are hereby incorporated and made a part of this Note by reference.

Any waiver of any payment due hereunder or the acceptance by the Lender of partial payments hereunder shall not, at any other time, be taken to be a waiver of the terms of this Note or the Loan Agreement or any other agreement between Borrower and Lender.

Each of the Borrower and each Guarantor of this Note, jointly and severally, hereby waives the following: (1) demand, presentment, protest, notice of dishonor, suit against any party, exhaustion of legal remedies, and all other requirements necessary to charge or hold any party liable on any Obligation under this Note or the

Loan Agreement; (2) any further receipt for or acknowledgment of the Collateral now or hereafter deposited; (3) statement of Indebtedness; and (4) the right to interpose any set-off or counterclaim of any nature or description in any litigation in which the Lender, Borrower, or any Guarantor shall be adverse parties. Borrower and the Guarantors jointly and severally agree that any Obligations under this Note or Loan Agreement may, from time to time, in whole or in part, be renewed, extended, modified, accelerated, compromised, discharged or released by the Lender, and any Collateral, lien and/or right of set-off securing any Obligation may, from time to time, in whole or in part, be exchanged, sold, or released, all without notice to or further reservations of rights against Borrower or Guarantors and all without in any way affecting or releasing the liability of Borrower or Guarantors.

Borrower and Guarantors shall be jointly and severally liable for all Indebtedness represented by this Note and Loan Agreement. This Note and Loan Agreement shall be binding upon Borrower, each Guarantor and their respective heirs, executors, administrators, assigns and shall inure to the benefit of the Lender, its successors and assigns.

Borrower and Guarantors each acknowledge and agree that Lender may sell, assign, pledge, encumber, or otherwise transfer all or any portion of its interest in this Note and Loan Agreement, the documents evidencing and securing those Obligations, and that in connection with any such proposed transfer, Lender may disclose to the proposed purchaser any or all information in its files as to the Loan evidenced by this Note.

Surrender of this Note, upon payment or otherwise, shall not affect the right of the Lender to retain the Collateral as security for other Obligations.

All notices and other communications under this Note shall be in writing. All written notices and communications shall be sent by registered or certified mail, postage prepaid, return receipt requested, by reputable overnight courier, freight prepaid, or delivered by hand. All notices and other communications under this Note shall be given at the following addresses and the attention of the following persons:

(i)      If to Borrower:

> AVYC,LLC
> 2 Compromise St
> Annapolis, MD 21401
> Attn: Legal
> Tel: 410-212-9937
> Email: pbh@avyc.com

With copies to:

> _____
> _____
> _____
> _____

(ii)     If to Lender:

> Sweet Caroline Marine Ltd.
> c/o Robert Allen Law
> 1441 Brickell Avenue, Suite 1400
> Miami, FL 33131
> Attention: Adrian Z. Karborani and Claudia Casalis
> akarborani@robertallenlaw.com; ccasalis@robertallenlaw.com

Notwithstanding the foregoing, all written notices and communications under this Note shall be sent to such other address or facsimile number or to the attention of such other person as the party to whom such

information pertains may hereafter specify for the purpose in a notice to the other specifically captioned "Notice of Change of Address". All notices shall be deemed to be delivered upon receipt or refusal of receipt.

All payments on this Note received during normal banking hours after 12:00 p.m. shall be deemed received at the opening of the next Banking Day.

THIS NOTE AND THE LOAN AGREEMENT SHALL BE GOVERNED BY, ENFORCED, AND CONSTRUED EXCLUSIVELY IN ACCORDANCE WITH THE LAWS OF THE STATE OF FLORIDA, without regard to any laws, rules or regulations concerning conflict of laws that might result in the application of the laws of any other jurisdiction; provided, however, that matters pertaining to the perfection of liens and the enforcement of remedies with respect to Collateral shall be governed by the laws of the jurisdiction where such Collateral may be located to the extent such local laws are mandatorily applicable to such issues.

Notwithstanding the foregoing, Lender reserves the right to exercise any of the remedies available to a secured lender under the laws of, including the maritime laws or Uniform Commercial Code or other laws of similar effect as adopted in, or as may apply in the State of Florida, the United States, or any place where Borrower is registered, maintains a place of business, or any place where the Vessel or any of the Collateral may be located, including, without limitation, the remedy of non-judicial repossession and sale.

Any legal action or proceeding with respect to this Note or the Loan Agreement or any related document may be brought in the courts of Miami-Dade County in the State of Florida or the Federal Courts of the United States for the Southern District of Florida in Miami-Dade County, and by execution and delivery of this Note, Borrower and the Lender consent to the non-exclusive jurisdiction of those courts. Borrower and Lender irrevocably waive any objection, including any objection to the laying of venue or based on the ground of forum non conveniens, which it may now or hereafter have to the bringing of any action or proceeding in such jurisdiction in respect of this Note or any document related hereto.  Notwithstanding the foregoing, (i) Lender shall have the right to bring any action or proceeding against the Borrower, any Guarantor, or their property in the courts of any other jurisdiction the Lender may deem necessary and appropriate in order to enforce its rights and remedies under the Loan Documents or any related documents, and (ii) Borrower and Lender each acknowledge that any appeals from the aforesaid courts may have to be heard by a court located outside the jurisdiction of the jurisdiction of such courts.

BORROWER (AND EACH GUARANTOR) AND LENDER, BY ACCEPTANCE OF THIS NOTE, KNOWINGLY, VOLUNTARILY AND WITH ADVICE OF COUNSEL, HEREBY WAIVE THE RIGHT TO A TRIAL BY JURY IN OR WITH RESPECT TO ANY PROCEEDING ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE, THE LOAN AGREEMENT OR ANY LOAN DOCUMENT, OR GUARANTIES, OR WITH RESPECT TO DEALINGS BETWEEN LENDER AND BORROWER OR ANY GUARANTOR CONCERNING ANY COURSE OF CONDUCT, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO PROVIDE CREDIT TO THE BORROWER.

BORROWER HEREBY IRREVOCABLY APPOINTS SILVERMAN THOMPSON, 400 E. PRATT ST SUITE 900, BALTIMORE, MD 21202, AS AGENT FOR SERVICE OF PROCESS FOR THE PURPOSES HEREOF. BORROWER HEREBY AGREES THAT THE LENDER MAY EFFECT SERVICE OF PROCESS UPON THE UNDERSIGNED BY MAILING PROCESS VIA MAIL OR COURIER TO SILVERMAN THOMPSON, 400 E. PRATT ST SUITE 900, BALTIMORE, MD 21202, ATTN: STEVEN N. LEITESS, ESQ.  BORROWER IRREVOCABLY WAIVES PERSONAL SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER PROCESS. NOTHING IN THIS AGREEMENT WILL AFFECT THE RIGHT OF LENDER TO SERVE PROCESS IN ANY MANNER PERMITTED BY APPLICABLE LAW.

[Signature Page Follows]

IN WITNESS WHEREOF, Borrower has executed this Note on the date first written above.

**BORROWER:**

**AVYC, LLC**, a Republic of the Marshall
Islands limited liability company


By:_____
      Patrick T Britton-Harr, Managing Member